UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA RUSSELL, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, INC., a/k/a SOCAL PERMANENTE MEDICAL GROUP, a California Corporation; KAISER PERMANENTE INTERNATIONAL, a California nonprofit corporation; KAISER FOUNDATION HOSPITALS, a California nonprofit corporation; KAISER FOUNDATION HEALTH PLAN, INC., a California nonprofit corporation; and DOES 1-20, Inclusive,<br><br>                    Defendants. | Case No.: 22-cv-1930-W-JLB<br><br>**ORDER (1) GRANTING MOTION TO REMAND [DOC. 8], (2) GRANTING MOTION TO WITHDRAW REPLY [DOC. 17], AND (3) TERMINATING MOTION TO DISMISS [DOC. 7] AS MOOT** |

      Pending before the Court is Plaintiff Laura Russell's motion to remand this case to the San Diego Superior Court. Defendants Southern California Permanente Medical

1

Group ("SCPMG"), Kaiser Permanente International ("KPI"), Kaiser Foundation Hospitals ("KFH"), and Kaiser Foundation Health Plan, Inc. ("KFHP") (collectively "Defendants") oppose the motion.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1). For the following reasons, the Court **GRANTS** the motion to remand [Doc. 8] and **ORDERS** the case remanded. In light of this order, Defendants' pending motion to dismiss [Doc. 7] is **TERMINATED** as moot.

## I. RELEVANT BACKGROUND

Plaintiff Laura Russell worked for Defendants from April 22, 2019 until July 4, 2022. (*Compl.* ¶¶ 43, 45.) Plaintiff filed her Complaint on August 26, 2022 in San Diego County Superior Court. (*See Civil Case Cover Sheet* [Doc. 1-4].) The Complaint alleges thirteen causes of action for (1) failure to pay earned wages (Cal. Labor Code § 204); (2) failure to pay overtime compensation (Labor Code §§ 510 & 1194); (3) failure to pay minimum wage (Labor Code §§ 1182.12, 1194, 1197); (4) reporting time pay violations (Labor Code § 204); (5) meal period violations (Labor Code §§ 226.7, 512(a)); (6) rest period violations (Labor Code §§ 226.7, 512(a)); (7) failure to furnish accurate wage and hour statements (Labor Code §226(e)); (8) failure to maintain accurate records (Labor Code § 1198.5); (9) forced patronage (Labor Code § 450); (10) failure to reimburse expenses (Labor Code § 2802); (11) unfair business practices (Business and Professions Code § 17200); (12) waiting time penalties (Labor Code § 203); and (13) civil penalties for violations of the Labor Code (Labor Code § 2698 or "PAGA").

On December 7, 2022, Defendants removed the case to this Court based on federal preemption. (*Notice of Removal* [Doc. 1].) Plaintiff now moves to remand. (*Mot.* [Doc. 8].)

## II. PLAINTIFF'S AMENDED REPLY

Plaintiff's original reply brief on her motion to remand [Doc. 12] contained approximately 15 pages of legal argument, which exceeds the maximum page limit of 10 allowed under California Civil Local Rule 7.1(h). Defendant objected to and moved to strike the reply [Doc. 16]. Plaintiff thereafter moved to withdraw the reply [Doc. 17] and filed an amended reply that complies with the required page limit [Doc. 18]. Defendant has not objected to the withdrawal or submission of the amended reply.

"[J]udges exercise substantial discretion over what happens inside the courtroom." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)). Pursuant to this broad discretion, the Court will consider the amended reply. Given that Plaintiff promptly rectified their mistake, the Court finds that considering the amended reply will not prejudice either party. The Court accordingly **GRANTS** Plaintiff's motion to withdraw the reply [Doc. 17].

## III. LEGAL STANDARD

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs. 28 U.S.C. § 1441. The removing party bears the burden to establish that federal subject matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove a case originally filed in state court if it presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a), 1441(a)–(b). A case presents a "federal question" if a claim "aris[es] under the Constitution, laws, or treaties of the United States." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425 (1987). Thus, where the plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

The "artful pleading" doctrine, however, is an exception to the well-pleaded complaint rule. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2, 101 S.Ct. 2424 (1981). Under the "artful pleading" doctrine, a federal court should uphold removal where state claims are completely preempted by federal law. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). The complete preemption doctrine is narrowly construed. *See Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule' ....").

## IV. DISCUSSION

Plaintiff moves to remand this action back to state court on the grounds that this Court lacks subject matter jurisdiction because no federal-question jurisdiction exists. Defendants argue that Plaintiff's California Labor Code Claims are preempted by federal law and therefore provide this Court with subject matter jurisdiction.

### A. LMRA Preemption

The Parties dispute whether Plaintiff's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The LMRA gives federal courts exclusive jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Section 301 governs claims

4

founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 394 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987). "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983). Notwithstanding the power of this preemptive force, a claim that seeks to vindicate "nonnegotiable state-law rights ... independent of any right established by contract" is not within section 301's reach. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see also Livadas v. Bradshaw*, 512 U.S. 107, 123–24 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, ... it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement ... that decides whether a state cause of action may go forward." (citations omitted)).

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the Court must determine if the "asserted cause of action involves a right conferred upon an employee by virtue of state law," independent of a collective bargaining agreement. *Id.* If the right exists solely because of the CBA, then the claim is preempted, and analysis ends. *Id.* Second, if the right exists independently of the CBA, the Court must then consider whether resolving the dispute is nevertheless "substantially dependent on [the] analysis of a [CBA]." *Id.* "If such dependence exists, then the claim is preempted by section 301; if not, then the claim" is not preempted. *Id.* at 1059–60. Here, Defendants make arguments under both steps of the Burnside test.

### 1.  *Burnside* Step One

Defendants only argument under *Burnside*'s first prong is that Plaintiff's overtime claim is preempted by the LMRA because the National Union of Healthcare Workers Collective Bargaining Agreement with Kaiser Permanente, [KFH] and [SCPMG] October

1, 2018 - September 30, 2021 (the "CBA") not state law, creates Plaintiff's right to overtime compensation. (*Opp.* [Doc. 11] at 10-13.) Specifically, Defendants contend that Plaintiff's right to overtime is created by Labor Code section 514 ("Section 514"), which provides that:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

CAL. LAB. CODE § 514; *see also* Wage Order No. 5-2001(3)(L) (same). Defendants argue that the CBA satisfies the requirements of Section 514.

Defendants' argument fails because asserting Section 514 as a defense is not a basis for preemption. Section 514 is an affirmative defense that much be raised by Defendants. *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 954 (C.D. Cal. 2014); *see also Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999) ("The assertion of an exemption from the overtime laws is considered to be an affirmative defense."). The Supreme Court has "made clear that reliance on the CBA as an aspect of a defense is not enough to 'inject a federal question into an action that asserts what is plainly a state-law claim.'" *Burnside*, 491 F.3d at 1060 (quoting *Caterpillar*, 482 U.S. at 399). Accordingly, "a defense based on the terms of a CBA is not enough to require preemption." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 690 (9th Cir. 2001) (citing *Caterpillar*, 482 U.S. at 399); *see also Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (holding that claims "are not preempted under this first step, if they just . . . invite use of the CBA as a defense."). Section 514, therefore, does not provide a basis for preemption under step one of the *Burnside* test.

### 2. *Burnside* Step Two

Defendants make several preemption arguments under step two of the *Burnside* test. In sum, Defendants argue that the majority of Plaintiff's state law claims would require interpretation of the CBA. (*See Opp.* at 1-2.)

#### a) Overtime Claim

Defendants first argue that Plaintiff's overtime claim requires interpretation of the CBA because the Court would have to evaluate whether "non-per diem employees" are entitled to overtime compensation under the CBA in order to decide whether Defendants deprived Plaintiff and the Aggrieved Employees of rightfully earned overtime compensation. (*Opp.* at 13; *see Lyon Decl., Ex. A* [Doc. 7-7], at p. 9.) According to Defendants, the parties "have a present dispute regarding the scope and meaning" of the "earnings" provision for non-per-diem employees. (*See Lyon Decl.*, Ex. A [Doc. 7-7], at p. 9, Art. XV, § 1(B).)

As an initial matter, the Court is not convinced that Defendants have accurately described Plaintiff's position. Plaintiff references this provision in the context of whether the CBA supplants Section 510 under Section 514 (*see supra,* III.A), arguing that because the CBA's only reference to "overtime" for non-per diem employees is silent as to "the rate, method, and calculation of overtime pay" the CBA does not satisfy Section 514. (*Mot.* at 11-12.) Plaintiff's papers make clear that this argument is not in reference to the merits of Plaintiff's overtime claim.

At any rate, the Court does not agree that it will have to interpret the "earnings" provision to resolve Plaintiff's overtime claim. The Complaint states that the Plaintiff and other similarly situated employees ("Aggrieved Employees") are "all current and former non-exempt, hourly employees[.]" (*Compl.* ¶¶ 10-11.) Plaintiff alleges that "Defendants typically scheduled Plaintiff shifts for ten hours per shift, entitling Plaintiff (as a non-exempt employee under California Labor Code § 510) to premium overtime pay in the amount of 1.5x her hourly rate for all hours worked in excess of 8 hours." (*Compl.* ¶ 92.) And she alleges that "Defendants have not and continue to fail to pay the

Aggrieved Employees overtime compensation." (*Compl.* ¶ 96.) In short, Plaintiff alleges that as non-exempt employee she is entitled to overtime under Section 510.

As Defendants acknowledge, this cause of action is dependent on whether or not Plaintiff was misclassified as an exempt employee. (*See Mot. to Dismiss* [Doc. 7] at 10.) To resolve this claim, the Court or a jury will have to determine: (1) whether Plaintiff was exempt from California's overtime law, which is determined by factual issues not related to the CBA (*see* CAL. CODE REGS., tit. 8, §§ 11040(1)(A)(3)(a), (c), (d)); *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555 (Ct. App. 1995); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486, at *31 (N.D. Cal. Sept. 3, 2015), (2) whether she was paid overtime, and (3) how much overtime pay she is owed under Section 510. None of these issues will require the Court to decide whether the "earnings" clause entitles non-per-diem employees to overtime under the CBA. Since the Court finds that it will not be required to interpret the CBA to resolve Plaintiff's overtime claim, this cause of action is not preempted by the LMRA.

### b) Earned Wages and Minimum Wage Claims

Defendants next argue that Plaintiffs First Cause of Action (failure to pay earned wages) and Third Cause of Action (failure to pay minimum wage) are preempted under the second *Burnside* prong "because the CBA must be interpreted to resolve Plaintiff's allegations regarding the appropriate rate of payment for on-call shifts, which are the sole basis for these claims as stated in the Complaint." (*Opp.* at 17.) Plaintiff's cause of action for failure to pay earned wages alleges that Defendants "failed to pay Plaintiff the agreed upon hourly wage for all hours that she worked during her on-call shifts, paying Plaintiff $10.00 per hour until October 19, 2020, and $12.00 per hour from October 19, 2020, until July 4, 2022, regardless of whether Plaintiff was working, or was on-call." (*Compl.* ¶ 84.) Plaintiff's cause of action for failure to pay minimum wage alleges that Defendants "were required to pay Plaintiff at least minimum wage for all on-call hours" and that "Defendants failed to and continue to fail to pay all Aggrieved Employees for the statutory minimum wage for on-call shifts." (*Compl.* ¶¶ 104, 106.)

Under California law, "[o]n-call waiting time may be compensable if it is spent primarily for the benefit of the employer and its business." *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 523 (Cal. Ct. App. 2009). "A determination of whether the on-call waiting time is spent predominantly for the employer's benefit [and is thus compensable] depends on two considerations: (1) the parties' agreement, and (2) the degree to which the employee is free to engage in personal activities." *Id.* (citing *Owens v. Local No. 169, Assn. of Western Pulp & Paper Workers*, 971 F.2d 347, 350-55 (9th Cir. 1992)). Whether the employee had use of on-call time for personal activities depends on: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." *Owens*, 971 F.2d at 351 (fns. omitted). These factors are nonexclusive and no single one is dispositive. *Id.*

Defendants argue that the Court will be required to interpret the CBA's provisions regarding "Standby Pay" to resolve Plaintiff's claims based on on-call pay. (*Opp.* at 19.) According to Defendants, the "Standby Pay" provisions govern the rate of payment for the on-call shifts about which Plaintiff complains and that the Court will need to interpret these provisions to determine whether the "on-call hours" constitute "Standby Pay" hours and thus require payment of the Aggrieved Employees full rate of compensation. This argument misconstrues Plaintiff's allegations. Plaintiff is not contending that the Aggrieved Employees are owed their "full rate of compensation" under the CBA; Plaintiff is arguing that the Aggrieved Employees are owed minimum wage for all hours worked that constitute "on-call" hours under California law. (*See Compl.* ¶¶ 78, 103.) The Court does not agree that the "Standby Pay" provisions cited by Defendants affect that claim in any way. Whether the "on-call hours" about which Plaintiff complains qualify as standby hours and thus require payment of the Aggrieved Employees' full rate

of compensation under the CBA is a separate question from whether the Aggrieved Employees worked "on-call" hours under California law and did not receive minimum wage for those hours. And even if the Court did agree that these provisions were relevant to Plaintiff's claims, the Court is not convinced that it would be required to "interpret" these provisions as opposed to merely "look[ing] to" them in order to resolve Plaintiff's on-call claims. Defendants do not point to any part of the provisions that is unclear or needing interpretation.

Defendants second argument regarding the "on-call" claims suffers from the same flaws as the first. Defendants point to two CBA provisions regarding standby time (*see Lyon Decl., Ex. A* [Doc. 7-7], at p. 11, Art. XV, § 5) arguing that the phrases "to go to work" and "to return to work" are subject to dispute between the parties and thus will need to be interpreted in order to resolve Plaintiff's claims. But the meaning of these terms in the parties' contractual agreement is not relevant to the claims. California law's definition of being "on-call" does not depend on whatever definition of these terms these parties intended in the CBA. The meanings of these provisions are relevant to whether Plaintiff was on "standby" under the CBA, but the Court will not need to interpret these phrases to determine whether and when the Aggrieved Employees were "on-call" under California law and therefore earned minimum wage.

The Court finds that interpretation of the CBA is not required to resolve Plaintiff's standby claims. These claims allege that Defendants failed to pay the Aggrieved Employees the legally required compensation for on-call shifts. (*See Compl.* ¶¶ 76-90, 99-108.) Assessing these claims merely requires comparison of what wages were paid for time when the Aggrieved Employees were "on-call" with the provisions of California law and the relevant sections of the CBA. The Court may be required to "look to" the standby provisions that Defendants emphasize as part of analyzing the on-call claims, but the ultimate answer to that question will be answered by analyzing California law and how the time was actually spent, which will not require interpretation of the CBA.

Accordingly, these claims are not preempted and do not provide a basis for federal subject matter jurisdiction.

### c) Meal and Rest Break Claims

Defendant next argues that the Court will be required to interpret the CBA in order to resolve Plaintiff's meal and rest break claims. (*Opp.* at 14.) The parties agree that these claims (the fifth and sixth causes of action) are dependent upon Plaintiff's allegation that the Aggrieved Employees were misclassified as "exempt" employees. (*See Mot.* at 15; *Opp.* at 14.) Defendants maintain that resolution of this allegation will require the Court to interpret the CBA. Plaintiff disagrees, pointing to several California district court cases to argue that "an employee's exempt/nonexempt status is a 'factual issue' that requires courts to analyze specific work performed by an employee." (*Mot.* at 15.)

"Exempt" and "non-exempt" work are legal terms of art which are defined in the California Labor Code and the Industrial Welfare Commission's wage orders. *See* CAL. LABOR CODE § 515; 8 C.C.R. § 11040. An employee "who is exempt from meal or rest or recovery period requirements" is not subject to the meal and rest requirements of Cal. Labor Code §§ 227.7, 512(a). CAL. LABOR CODE § 226.7(e). To determine whether an employee was "exempt," a court conducts a two-step analysis. First, a court evaluates the type of work an employee actually performed; second, a court compares these facts to the standards set forth in the California Labor Code and the Industrial Wage Commission's wage order and decides whether the employee performed primarily exempt or non-exempt work. *See Smith v. Service Employees Int'l Union, Local 521*, No. 16-cv-02547-LHK, 2016 WL 4268713 (N.D. Cal. Aug 14, 2016); *Nordquist*, 38 Cal. Rptr. 2d at 224–25 (determining whether an employee was exempt by reviewing testimony on the type of work the employee actually performed). District courts in California have taken this approach. *See Perine v. ABF Freight Systems, Inc.*, 457 F. Supp. 2d 1004 (C.D. Cal. 2006) (examining the type of work an employee performed and ignoring information on job titles, job procedures, and workplace discipline from the collective bargaining

agreement); *Khan v. K2 Pure Solutions, L.P.*, 2013 WL 6503345, *5–*6 (N.D. Cal. Dec. 4, 2013) (rejecting claim that an examination of an employee's formal job duties, without an analysis of the employee's actual responsibilities and what employee actually did, is sufficient to determine exempt or non-exempt status). And as the court in *Smith* notes, this approach is supported by the Ninth Circuit's analysis in an analogous context. *See Vinole v. Countrywide Home Loans*, 571 F.3d 935, 945 (9th Cir. 2009) ("Under California law, a court evaluating the applicability of the outside salesperson exemption must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description").

Defendants do not quibble with the import of these cases, but instead attempt to draw a line between determining exempt status for one employee and determining exempt status for a class of employees, like the Aggrieved Employees here. According to Defendants, the Court may be able to determine whether Plaintiff individually was misclassified by just looking at the specific work she performed without interpreting the CBA, but the Court will have to interpret the CBA to determine whether *all* the Aggrieved Employees were misclassified. Defendants argue that a class being exempt is different than an individual because all the Aggrieved Employees are covered by the CBA and several CBA provisions discuss the nature of the work, job requirements, and scheduling for the Aggrieved Employees. (*See Opp.* at 15-16.) These facts do not justify a departure from the exempt analysis laid out above. As explained by the cases above, a court determines exempt status by looking at the work an employee performed. Defendants fail to explain why this analysis should change simply by virtue of there being more than one employee at issue.

Moreover, the provisions cited by Defendants do not offer insight into the type of work the Aggrieved Employees "actually performed." Defendants state that the CBA covers all of the employees that Plaintiff includes as Aggrieved Employees. This fact does not tell a court anything about the work the employees performed. *See Perine*, 457 F. Supp. 2d at 1012 (acknowledging that a collective bargaining agreement covered the

1  plaintiff and finding that it did not affect the analysis regarding work actually performed.
2  Defendants state that the CBA "recognizes the professional licensure and accreditation
3  necessary for each job code covered" by the CBA and "the professional nature of the
4  work performed by the employees covered by" the CBA. These provisions do not tell a
5  court anything about the work the employees actually performed. Defendants state that
6  the CBA recognizes that "[w]hile each Full-time employee will be scheduled to work
7  forty (40) hours per week, the actual daily and weekly work schedule may vary, due to
8  time requirements of specific assignments and seasonal variations in workload." This
9  provision does not tell a court anything about the actual schedules of the employees.

10  Finally, even if the Court agreed that the provisions should factor into the exempt
11  analysis, Defendants do not show that these provisions would require interpretation as
12  opposed to application. It is not enough "that resolving the state law claim requires a
13  court to refer to the CBA and apply its plain or undisputed language." *Alaska Airlines*
14  *Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). The provisions Defendants cite are
15  not in dispute. If a court were to incorporate these provisions into an analysis of the
16  employees' exempt status, it would merely need to refer to or apply the provisions.

17  Defendants also argue that whether the Aggrieved Employees received a salary
18  will require interpretation of the CBA. (*Opp.* at 16.) As an initial matter, resolution of
19  this issue will not necessarily be required to decide Plaintiff's misclassification
20  allegations. Payment of a salary is a necessary but not sufficient element of establishing
21  that an employee was exempt. *See* CAL. LABOR CODE § 515; 8 C.C.R. § 11040. In other
22  words, if a court finds that an employee was engaged in primarily non-exempt work, that
23  employee is not exempt regardless of how he or she was paid.

24  But even if a court reaches the salary question, the court will only need to "look to"
25  the CBA, not interpret it. A "salary" is "generally understood to be a fixed rate of pay as
26  distinguished from an hourly wage." *Negri v. Koning & Assoc.*, 216 Cal. App. 4th 392
27  (2013). California courts follow the federal "salary basis" test to analyze this
28  requirement. *See id.* at 398 (noting that the California Labor Commission has adopted

13

22-cv-1930-W-JLB

the federal test in opinion letters); *Kettenring v. L.A. Unified Sch. Dist.*, 167 Cal. App. 4th 507, 513 (2008). Under the "salary basis" test, an employee is "considered to be paid on a 'salary basis' ... if the employee regularly receives ... a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). In *Negri*, the court found that an employee paid on an hourly basis did not meet the salary basis test because his pay theoretically varied according to the numbers of hours worked. 216 Cal. App. 4th at 399-400. The employee's pay varied "according to the amount of time he put in" and was therefore not "predetermined." *Id.* at 399.

As Defendant notes, the CBA has several provisions regarding how employees were paid. These provisions are perfectly clear. No substantial interpretation of the terms will be required to determine whether the Aggrieved Employees pay met the "salary basis" test. *Negri*, 216 Cal. App. 4th at 398. Defendants are incorrect that a court will need to "evaluat[e]" what Defendants and the Union "intended" regarding base rate salary. At most, a court may need to "apply" them in conducting the "salary basis" test.

For the reasons stated above, Plaintiff's misclassification allegations are not preempted.

### d) Forced Patronage Claim

Defendants' last argument under step two of the *Burnside* test is that Plaintiff's claim under California Labor Code § 450 requires interpretation of the CBA. (*Opp. at Mot.* at 20.) The gist of this claim is that "Plaintiff and all Aggrieved Employees were required to purchase insurance through Kaiser's insurance administrator, Kaiser Foundation Health Plan." (*Compl.* ¶ 151.) Plaintiff contends that "the managers, acting as agents on behalf of Defendants, [] forced employees to partake in Kaiser's health benefits program." (*Mot.* at 17.)

Defendants take issue with Plaintiff's framing, noting that the Complaint "does not advance any facts that could establish managers and supervisors working for Defendants

somehow forced employees to purchase health insurance from KFHP" and arguing that the CBA's health insurance eligibility provision will need to be interpreted to resolve this claim. *See Lyon Decl., Ex. A* [Doc. 7-7] at p. 31, Art. XXX, § 1(A). The Court agrees that the Complaint's factual allegations regarding this claim are thin, but the sufficiency of those allegations are not at issue here.

As alleged, the claim will not require interpretation of the eligibility provision cited by Defendants. Defendants acknowledge that this provision is about whether employees are "entitled" to purchase insurance through the Kaiser Foundation Health Plan. (*See Opp.* at 21.) The provision is about whether an employee is eligible for the health plan, not about whether an employee was required to purchase the health plan. No interpretation of the provision would have any bearing on whether the Aggrieved Employees managers forced them to partake in the health plan, which is the crux of Plaintiff's claim. Since a court would not need to interpret the CBA to resolve this claim, Plaintiff's forced patronage cause of action is not preempted.

### B. ERISA Preemption

Defendants argue that Plaintiff's Ninth Cause of Action brought pursuant to Cal. Labor Code 450(a) gives the court federal subject matter jurisdiction because it is preempted by the Employee Retirement Income Security Act ("ERISA"). (*Opp.* at 22.) ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relate[s] to" an ERISA plan if it either (1) has a connection with an ERISA plan or (2) references such a plan. *California Div. of Labor Stds. Enf't v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997).

#### 1. Reference to an ERISA plan

A state law claim has a forbidden reference to ERISA plans "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation[.]" *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016) (quoting *Dillingham*, 519 U.S. at 325). Defendants argue that

Plaintiff's claim references ERISA plans but do not flesh out this argument. (*See Opp.* at 23-24.) At any rate, the Court finds that the claim does not refer to ERISA plans. The text of section 450 does not act immediately and exclusively upon ERISA plans and the law could operate even if ERISA plans did not exist.

### 2.   Connection to an ERISA plan

A claim has an impermissible "connection with" an ERISA plan if it "governs [] a central matter of plan administration' or 'interferes with nationally uniform plan administration." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir. 2019). A claim may also have an impermissible connection with ERISA plans if it "bears on an ERISA regulated relationship." *Depot*, 915 F.3d at 666 (quoting *Or. Teamster Emp'rs Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015)). This test indicates preemption where a statute bears on an ERISA-regulated relationship (e.g., the relationship between plan and plan member, between plan and employer, between employer and employee). *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009).

To guide this analysis, courts look to "the objectives of the ERISA statute as a guide, bearing in mind a starting presumption that Congress did not intend to supplant... state laws regulating a subject of traditional state power unless that power amounts to a direct regulation of a fundamental ERISA function." *Paulsen*, 559 F.3d at 1082 (internal quotation marks and citations omitted). Both the Supreme Court and the Ninth Circuit have recognized that "[t]he basic thrust of the pre-emption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995) ("*Travelers*"); *Paulsen*, 559 F.3d at 1082. Consistent with these limitations, preemption does not occur "if the state law has only a tenuous, remote, or peripheral connection with covered plans[.]" *Travelers*, 514 U.S. at 661 (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n. 1 (1992)).

Defendants argue that Plaintiff's claim has a connection with an ERISA plan because "its resolution depends, at least in part, on interpretation of rights and obligations under an ERISA plan." (*Opp.* at 23.) As an initial matter, the Court is unconvinced that it will be required to interpret the ERISA plan to resolve the claim; the provisions Defendants' cite do not touch upon whether employees were required or forced to enroll in the plan or even, contrary to Defendants' suggestion, "opting out of enrollment." (*See Declaration of Maryann Khinda-Lombardo in Support of Defendants' Notice of Removal, Ex. A* [Doc. 1-12], at p. 5-6.)

At any rate, the Court finds that Defendants' "interpretation" argument does not demonstrate an impermissible connection with an ERISA plan. Defendants do not point to any other cases where this type of "interpretation" argument has warranted preemption. Here, though a court may be required to interpret certain plan provisions to resolve Plaintiff's claim, the claim does not "govern [] a central matter of plan administration" or "interfere[] with nationally uniform plan administration." *Egelhoff*, 532 U.S. at 148. Section 450(a) forbids an employer from compelling or coercing an employee to patronize that employer, or any other person, in the purchase of something of value. The core of Plaintiff's claim—that "all Aggrieved Employees were required to purchase insurance through [Kaiser]" (*Compl.* ¶ 151)—is about conduct outside the scope of plan administration. In other words, whether the Aggrieved Employees were unlawfully forced to purchase insurance under section 450(a) is not related to "a fundamental ERISA function." *Paulsen*, 559 F.3d at 1082 (internal quotation marks and citations omitted).

Defendants' second argument for connection is that the alleged harm to Plaintiff and the alleged unjust enrichment of Defendants came solely by way of premium payments made through an ERISA plan, and thus the cause of action "relates to" ERISA. (*Opp.* at 23-24.) But again, this argument fails to show that Plaintiff's claim is related to ERISA plan administration. Though the potential damages for this cause of action may be based on premiums paid into an ERISA plan, this connection is the kind of "tenuous,

remote, or peripheral connection" that does not warrant preemption. *Travelers*, 514 U.S. at 661 (quoting *Greater Washington Bd. of Trade*, 506 U.S. at 130 n. 1). The Court is not aware of any authority suggesting that Congress intended to supplant an area of traditional state power (labor law) simply because a possible method of relief has a tenuous connection to an ERISA plan.

Since the Court finds that Defendants have not shown that Plaintiff's forced patronage claim relates to an ERISA plan, this cause of action is not preempted. Accordingly, this cause of action does not establish a basis for federal subject matter jurisdiction over the Complaint.

## V.  CONCLUSION & ORDER

The Court finds that Plaintiff's claims are not preempted by the LMRA or ERISA. Because Defendants have not established a basis for federal subject matter jurisdiction, the Court **GRANTS** Plaintiff's motion to remand [Doc. 8] and **ORDERS** the case remanded to the San Diego Superior Court. In light of this order, Defendants' motion to dismiss [Doc. 7] is **TERMINATED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: March 9, 2023

Hon. Thomas J. Whelan
United States District Judge